NO. 07-04-0331-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 6, 2005


______________________________



BLANCA ESTELA RODRIGUEZ, a.k.a., BLANCA


ESTELA ALVAREZ, a.k.a, BLANCA RODRIGUEZ ALVAREZ 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 47,840-A; HON. PATRICK PIRTLE, PRESIDING


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

 Appellant Blanca Estela Rodriguez appeals her conviction of theft, enhanced by two
prior convictions. After a bench trial, she was sentenced to two years confinement in a
state jail facility and fined $10,000. 

 Appellant's appointed counsel filed a motion to withdraw, together with an Anders (1)
brief wherein she certified that, after diligently searching the record, she concluded the
appeal was without merit. Along with her brief, appellate counsel attached a copy of a letter
sent to appellant informing her of counsel's belief that there was no reversible error and of
appellant's right to file a response or brief pro se. By letter dated October 13, 2004, this
court also notified appellant of her right to tender her own brief or response and set
November 10, 2004, as the deadline to do so. To date, appellant has filed neither a
response, brief, nor request for an extension of time. 

 In compliance with the principles enunciated in Anders, appellate counsel discussed
two potential areas for appeal. They involved the legal and factual sufficiency of the
evidence. Thereafter, she illustrated how it lawfully supported the conviction. 

 We have conducted our own review of the record to assess the accuracy of
appellate counsel's conclusions and to uncover any error per Stafford v. State, 813 S.W.2d
503 (Tex. Crim. App. 1991). That review also failed to uncover any reversible error. 

 Accordingly, the motion to withdraw is granted, and the judgment is affirmed.


 Brian Quinn

 Justice

 


Do not publish. 
1. Anders v. California, 396 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). 



/EM>, 1998 Tex. App. LEXIS 7531 (Tex.App.--Amarillo Dec. 3, 1998), on further
rehearing, 1999 Tex. App. LEXIS 86 (Tex.App.--Amarillo Jan. 8, 1999, pet. denied) (not
published). 

 Because the two aspects of the suit are so closely interrelated, in order to
intelligently discuss this particular appeal, we will again recite the facts we iterated in our
opinion dealing with the coverage appeal. This is especially necessary inasmuch as the
parties to the extra-contractual portion of the lawsuit stipulated that the pleadings,
evidence, briefs, letters, and stipulations in connection with the coverage case might be
referenced and used in the extra-contractual case.

 Travelers issued two successive comprehensive general liability policies to Page
covering the period from January 1, 1985, through February 21, 1986. During that period,
Page undertook the construction of a large building in Albuquerque, New Mexico, called
The Montebello. Page was the general contractor on the project and hired the Associated
Masonry Construction Company (AMCON) as a subcontractor responsible for performing
the masonry work on the building, including the structural walls. Virtually all of AMCON's
work was completed within the Travelers policy period. Other subcontractors subsequently
finished the walls by applying stucco to the exterior and drywall to the interior. The
architect issued a certificate of substantial completion on December 23, 1986, and the
building was accepted by the owners.

 In late 1987, the owners noticed cracks in the stucco. In February and March 1988, 
the owners brought the cracks to Page's attention, who attributed them to the owners'
decision to omit expansion joints in the stucco. By late 1988, the owners believed the
cracks were due to structural deficiencies in the masonry work rather than defects in the
stucco. An engineering firm was hired, who determined the cause of the cracks was
certain deficiencies in the construction process.

 In January 1989, the owners notified Page and its surety, Safeco Insurance
Company (Safeco), of the defects and the owners' position that by failing to properly
investigate or repair the cause of the cracking, Page had breached its contract and,
because of the breach, they intended to file suit. On February 17, 1989, Page notified the
three insurance carriers of the owners' demands, but did not demand coverage or a
defense under the policies.

 The owners filed suit in New Mexico against Page and Safeco on June 12, 1989,
alleging breach of contract. Although the policy issued by Travelers required Page to
"immediately forward to [Travelers] every demand, notice, summons, or other process,"
Page failed to provide Travelers with the petition in the owner's suit or request a defense
until May 10, 1990. Travelers' immediate response is not clear from the record. On
October 12, 1990, Travelers agreed to assume the defense of Page, but reserved its right
to deny coverage and withdraw from defense of the claim if it determined there was no
"occurrence" during the policy period. Another pending action, between AMCON and
Page, was joined with the action brought by the building owners. In 1991 and 1992, the
owners made repairs to The Montebello.

 The parties settled the owners' suit against Page and Safeco on March 11, 1992. 
Safeco paid $950,000 to the building owners, and in turn, Safeco sought $1,092,000 in
reimbursement from Page and the Pages individually. (1) By letter dated June 17, 1992,
addressed to Travelers and two other insurers, Page requested that the companies
reimburse Page and the Pages individually for the full amount sought by Safeco, as well
as $158,713.68 in defense costs. There was no indication what, if any, portion of the
defense costs had been paid by the other insurers.

 Travelers maintained there was no coverage under the policies it issued because
there was no property damage during the policy periods. It also declined to pay additional
defense costs on the ground that those costs were incurred either before May 10, 1990,
or were incurred in defending the AMCON suit. In response, and on July 6, 1992, Page
and the Pages individually filed suit in Potter County against Travelers and the two other
insurers, Maryland Casualty Company and Employers Casualty Company. In that action,
Page and the Pages sought a declaration that Travelers' policy provided coverage and
asserted causes of action for breach of contract, breach of the duty of good faith and fair
dealing, negligence, violations of the Texas Insurance Code and the DTPA.

 Each of the insurance companies timely filed an answer. Employers Casualty was
subsequently put in receivership and had minimal involvement in this litigation. On
October 27, 1992, Maryland Casualty settled with Page and the Pages for $250,000. The
settlement agreement provided that $150,000 would be paid to Page and Safeco to settle
coverage claims and $100,000 to Safeco and the Pages individually for extra-contractual
claims. In 1994, Page and AMCON entered into a settlement whereby AMCON paid Page
$157,406 in exchange for dismissal of the claims against it. This agreement provided that
$138,366 was for investigation of the defects at The Montebello and $19,040 was to repair
interior drywall. In November of 1995, Page and the Pages moved for summary judgment
on the issue of coverage and breach of contract. Travelers responded and filed an
amended answer asserting late notification, lack of coverage, exclusions, and limitations
as affirmative defenses. Travelers also filed its own motion seeking summary judgment
on the issues of coverage and duty to defend.

 The trial court denied Travelers' motion and granted Page and the Pages' motion
for partial summary judgment, holding that Travelers had a duty to defend Page and the
policies provided coverage for the owners' property damage, but did not cover the cost of
repairing the faulty construction. The trial court found there were questions of fact on the
issue of damages and reserved that issue for trial. On an agreed motion, the trial court
severed the extra-contractual claims. Before the trial, the parties presented a document
entitled "Proposed Agreed Pretrial Order" signed by all parties that contained extensive
fact stipulations. Although the trial court never signed the stipulation, under Rule 11 of the
Rules of Civil Procedure, it is sufficient as an agreement under that rule.

 After the trial on damages, the trial court rendered judgment on the claims for
declaratory relief and breach of contract awarding $907,131.77 in actual damages,
$253,499.83 in pre-judgment interest, $170,000 in attorney fees, with an additional amount
of $30,000 on appeal to this court and $5,000 in making, or responding to, a writ of error (2)
to the supreme court. Upon the appeal of that judgment, we reversed the judgment for
property damage and rendered judgment for $50,000 (after credit) in loss of use damages
and $62,246.66 in defense costs, as well as attorney fees and interest. We remanded for
a determination by the trial court of pre- and post-judgment interest.

 Trial subsequently proceeded on the allegations of DTPA/Insurance Code extra-contractual liability based on Travelers' alleged misrepresentation of coverage and unfair
claims handling practices. After a bench trial, the trial court found Travelers had engaged
in conduct that violated the Texas DTPA and the Texas Insurance Code and entered the
judgment giving rise to this appeal.

 In challenging the trial court judgment, Travelers presents six issues. (3) We will
discuss those issues sequentially as the discussion becomes necessary to the disposition
of this appeal. In the first issue, Travelers inquires if there was legally and factually
sufficient evidence that it violated article 21.21 of the Texas Insurance Code (the Code)
or the DTPA. In particular, Travelers inquires:

 A. As a matter of law, did it have a reasonable basis to deny coverage
because of a bona fide coverage dispute?


 B. Did any of Travelers' statements regarding the interpretation of its
insurance policies constitute actionable misrepresentation?


 1. Can Travelers' statements regarding the interpretation of its
insurance policies constitute actionable misrepresentation?


 2. Can statements in internal Travelers memoranda, never
communicated to the plaintiffs, constitute actionable misrepresentation?


 3. Were Travelers' alleged misrepresentations the producing cause
of any injury to the plaintiffs?


 Appellees respond to Travelers' first issue contentions by asserting that the bona
fide dispute defense is not available to Travelers, statements and communications made
by Travelers to them amounted to more than a "purported 'interpretation' of its policies," 
selected memoranda in Travelers' files established an intent to mislead appellees as to
the coverages under Travelers' policies, and the misrepresentations were a producing
cause of damages to them as a matter of law. In their brief, appellees point out that the
"trial court's findings and conclusions as to TRAVELERS' unfair or deceptive acts or
practices, are grounded in TEX. BUS. & COM. CODE ANN. § 17.46(b)(5) and (12), and
14B V.A.T.S. INS. CODE, art. 21.21 § 4(1) and (2), all of which are actionable pursuant
to V.A.T.S. INS. CODE, art. 21.21, § 16 (Vernon 1981 and Supp. 1996)." The relevant
conclusions of law relied upon by appellees as pointed out by them are:

 2.05. The Travelers Indemnity Company engaged in unfair or deceptive acts
or practices as defined by 14B V.A.T.S. Ins. Code, Art. 21.21, §4(a) (Vernon
1981 and Supp. 1996), which resulted in damage to Page & Wirtz.
Specifically, Travelers:


 (a) Represented that its insurance contracts involved obligations which they
did not have or involve;


 (b) Represented its insurance services had characteristics or benefits
which they did not have;


 (c) Made statements misrepresenting the terms, benefits, or advantages of
their insurance policies;


 (d) Made assertions, representations, or statements with respect to their
insurance that were untrue, deceptive, or misleading;


 (e) Made misrepresentations relating to their insurance policies, by: 


 (1) making untrue statements of material fact;


 (2) failing to state material facts that were necessary to make other
statements not misleading, considering the circumstances under which they
were made;


 (3) making statements in such a manner as to mislead a reasonably
prudent person to a false conclusion of a material fact.

* * *


 2.07 The Travelers Indemnity Company engaged in unfair claims 
settlement practices that caused damages to Page & Wirtz. Specifically,
Travelers:


 (a) Misrepresented to Page & Wirtz pertinent facts or policy provisions
relating to the coverage at issue in violation of Article 21.21-2, §2(b)(1) and
28 Tex. Admin. Code §21.203(1), actionable pursuant to 14B V.A.T.S. Ins.
Code, Art.21.21, §16 (Vernon 1981)[Pre-1995 Amendments]; and 14B
V.A.T.S. Ins. Code, Art. 21.21, §4(10)(i)(Vernon Supp. 1996), actionable
pursuant to Art. 21.21, § 16 [Post-1995 Amendments].


 (b) Did not attempt in good faith to effectuate prompt, fair, and equitable
settlements of claims submitted to which liability has become reasonably
clear in violation of 28 Tex. Admin. Code §21.203(4), actionable pursuant to
14B V.A.T.S. Ins. Code, Art.21.21, §4(10)(iii)(Vernon Supp. 1996),
actionable pursuant to Art. 21.21, §16 [Post-1995 Amendments].


 (c) Failed within a reasonable time to affirm or deny coverage of a claim in
violation of 28 Tex. Admin. Code §21.203(1), actionable pursuant to14B
V.A.T.S. Ins. Code, Art. 21.21, §(16)(Vernon 1981)[Pre-1995 Amendments];
and 14B V.A.T.S. Ins. Code, Art. 21.21, §4(10)(V)(A) (Vernon Supp. 1996),
actionable pursuant to Art. 21.21 §16 [Post-1005 Amendment]. 


 (d) Refused to pay a claim without conducting a reasonable investigation of
the claim based upon all available information in violation of 28 Tex. Admin.
Code § 21.203(15), actionable pursuant to 14B V.A.T.S. Ins. Code, Art.
21.21 §16 (Vernon 1981) [Pre-1995 Amendments]; and 14B V.A.T.S. Ins.
Code, Art. 21.21 §4(10)(viii)(Vernon Supp.1996), actionable pursuant to Art.
21.21, §16 [Post 1995 Amendment].


* * *



 2.10 The Travelers Indemnity Company engaged in unfair or deceptive acts
or practices as defined by 14B V.A.T.S. Ins. Code, Art. 21.21, §4(a)(Vernon
1981 and Supp. 1996), which resulted in damages to J.C. Page and Alice L.
Page, individually. Specifically, Travelers:


 (a) Represented that its insurance contracts involved obligations which they
did not have or involve;


 (b) Made statements misrepresenting the terms, benefits, or advantages of
their insurance policies;


 (c) Made assertions, representations, or statements with respect to their
insurance that was untrue, deceptive, or misleading;


 (d) Made misrepresentations relating to their insurance policies, by:


 (1) making untrue statements of material fact;


 (2) failing to state material facts that were necessary to make other
statements not misleading, considering the circumstances under
which the statements were made;


 (3) making statements in such a manner as to mislead a reasonably
prudent person to a false conclusion of a material fact.


 As we have noted, appellees' actions were grounded on Travelers' alleged
commission of various acts prohibited by article 21.21 of the Code and section 17.46(a)
of the Texas Business and Commerce Code. The gist of those allegations is that
Travelers asserted there was no coverage under its policies when it knew there was
coverage for the loss of use of the premises, even if the loss of use occurred well after the
policy period and, by continuing to deny that coverage, delayed the payment of defense
costs, refused to pay the defense costs that it represented it would pay, and otherwise
refused to assist its insured in the defense of the underlying litigation. Appellees argue
that this course of conduct by Travelers amounted to actionable misrepresentations on its
part.

 Appellees also argue that apart from the alleged misrepresentations, Travelers
erred in having Ed Wille, its claims handler, handle the dual responsibilities of
investigating coverage for the purposes of evaluating and handling the claim from a
defense perspective. By doing so, appellees claim, "all the while that TRAVELERS was
purportedly 'defending' its insured (as it had represented it was going to do), the same
claims handler embarked upon a fact gathering mission to obtain only evidence of facts
that would allow him to deny coverage altogether." By doing so, they continue, Travelers
attempted to place upon their defense attorney "the burden of providing only the selected
evidence that TRAVELERS could rely on in denying coverage." 

 Travelers contends that because there was a bona fide dispute about the coverage
of its policy, it could not be liable for punitive damages. Appellees respond that the bona
fide dispute defense would only be applicable to an article 21.21 § 4(10)(a)(ii) action and
not to their other allegations. As relevant here, that statute characterizes as an unfair
settlement practice, "failing to attempt in good faith to effectuate a prompt, fair, and
equitable settlement of a claim with respect to which the insurer's liability had become
reasonably clear." Tex. Ins. Code Ann. art. 21.21 § 4(10)(a)(ii) (Vernon Supp. 2002). 

 Appellees reason that the alleged failure of Travelers to pay legal defense costs it
had said it would pay and its attempt to impermissibly apportion them "between the
AMCON claims and the Forum claims, thereby representing that because there was no
coverage for the AMCON claim standing alone, TRAVELERS had no duty to pay defense
costs attributable to same" resulted in wrongful delay and a refusal to pay defense costs
due under its policy. Appellees also argue that Travelers misrepresented its defense
obligations to its insured by assuring Page's attorney it would undertake Page's defense
and "then wrongfully refusing to do so" and it "misrepresented its indemnity obligation
under the policies." Appellees then reason that to be actionable as a misrepresentation
under the Insurance Code or the DTPA, the statement need not rise to the level of
actionable fraud and "[a]ll that is required by Article 21.21, section 16, is that the practice
complained of be defined within section 17.46 of the DTPA or within Article 21.21, section
4." The gist of appellees' argument is that Travelers did not "misinterpret" its policy
language, but instead misrepresented its defense, as well as its indemnity obligation to its
insured.

 The answer as to whether the bona fide dispute defense applies to more than article
21.21 § 4(10)(a)(ii) actions requires a careful scrutiny of the seminal case of Universe Life
Ins. Co. v. Giles, 950 S.W.2d 48 (Tex. 1997). In that case, the court initially had to
consider whether there was some evidence to support a jury finding of bad faith on the part
of Universe. As relevant here, the court then went on to determine Universe's complaint
that there was no evidence to support a recovery of punitive damages below. The high
court began its discussion by referring to its decision in Transportation Ins. Co. v. Moriel,
879 S.W.2d 10 (Tex. 1994), and noted its explication that punitive damages can be
awarded for bad faith "only when an insurer was actually aware that its actions involved
an extreme risk--that is, a high probability of serious harm, such as death, grievous
physical injury, or financial ruin--to its insured and was nevertheless consciously indifferent
to its insured's rights, safety, or welfare." Giles, 950 S.W.2d at 57. The Giles court further
noted that Moriel "clarif[ied] the standards governing the imposition of damages in the
context of bad faith insurance litigation." Id. The court then went on to hold that although
the evidence was legally sufficient to support the jury's finding that Universe had breached
its duty of good faith and fair dealing, it was not sufficient to justify an award of punitive
damages. Id. Giles teaches, then, that in order to recover punitive damages, the conduct
of the insurance company must rise to the extreme risk and conscious indifference level
articulated in Moriel. 

 We do not read the teaching of Giles as being limited to the specific sections in
question there. Rather, when, as here, the alleged statutory violations are the functional
equivalent of alleged bad faith, the bad faith principles enunciated in Giles are applicable. 
In Escajeda v. Cigna Ins. Co. of Texas, 934 S.W.2d 402 (Tex.App.--Amarillo 1996, no writ),
we noted that a mere disagreement concerning the interpretation of a contract is not a
sufficient basis to sue under either article 21.21 of the Code or section17.46(a) of the
Business and Commerce Code. Id. at 407. We also noted that no misrepresentations
exist for the purposes of the DTPA where the only supposed misrepresentations are the
terms of the contract itself. Id. at 408. Without more, claims that an insurer such as
Travelers failed to affirm or deny coverage within a reasonable time or failed to conduct
a reasonable investigation have their genesis in the duty of good faith and fair dealing and,
in order to recover punitive damages, the insurer's conduct must rise to the level
explicated in Moriel and explained in Giles. Thus, if Travelers' denial of coverage arose
from a bona fide dispute as to the insurance coverage, and not as a result of deliberate
misrepresentations or conscious indifference, it would not be subject to punitive damages.

 In their brief, appellees posit that "[a]lthough the mere denial of indemnity benefits
does not amount to a misrepresentation, the reasons given by TRAVELERS for its denial
of indemnity benefits did amount to misrepresentations of TRAVELERS' coverage." They
go on to argue that knowing that their policies covered loss of use damages, albeit under
a reservation of rights, Travelers affirmatively represented it would undertake Page's
defense, and that by first delaying payment of Page's defense costs and then failing to
participate in the defense and by refusing to pay defense costs, although it knew coverage
existed under its policies, Travelers engaged in the type of unfair or deceptive acts or
practices defined in article 21.21 § 4(a) of the Code. They also argue that because
Travelers knew that loss of use was covered in their policies, its representations to Page
that the loss of use was not covered unless physical harm had "manifested" itself during
the policy period amounted to an unfair and deceptive act or practice. It is apparent that
appellees' arguments are bottomed on the premise that the record shows Travelers knew
it had loss of use coverage under its policies even if actual physical injury to the premises
did not manifest itself during the recited policy period. 

 In support of their proposition that Travelers knew it had loss of use coverage but
misrepresented coverage under the policy, appellees point to a series of letters Ed Wille,
a Travelers adjuster who was handling The Montebello claim, wrote to appellees' counsel
Frank Salazar, during the period from October 12, 1990, to and including June 29, 1992. 
In the letters written prior to the June 29, 1992 letter, Wille repeatedly asked about the
necessity for determining the time the property damage occurred/manifested and, in the
process, asked to be furnished copies of two letters that might help determine that
question. Wille was supplied the two letters, and in his June 29, 1992 letter to Salazar,
commented that the two letters "would seem to prove that the property damage did not
occur until well after our policy ended." However, in an internal memorandum dated April 
22, 1992, which, of course, was after receiving the copies of the two letters, but prior to his
June 29, 1992 reference to them, Wille noted, "[s]poke to Tom Mills . . . [he] does not feel
we need to respond to submission of the 2 letters we asked for. The letters really do not
help determine when damage 1st manifested itself." Appellees contend that this is
evidence of an actionable course of misrepresentation when Travelers knew it had loss
of use coverage regardless of the date of the occurrence.

 As additional evidence that Travelers knew it had loss of use coverage, appellees
contend that Wille admitted in deposition testimony that he knew it did not matter whether
the loss of use occurred within or outside the policy period. The response referred to
occurred in the course of the following colloquy with appellees' counsel and was in the
course of a discussion about policy provisions:

* * *


 Q: Physical injury to or destruction of tangible property which occurs during
the policy period, including the loss of use thereof. Including the loss of use
of the property. Is that what this is talking about?


 A: I would assume it was loss of use of the property.


 Q: That occurs at any time?


 A: Yes.


 Q: The loss of use doesn't have to take place during--the loss of use of the
property does not have to take place during the policy period, does it.


 A: No. As long as there's physical injury during the policy period.



* * *

 Q: --loss of use could have occurred much later and would have been
covered.


 A: Yes.


 Loss of use later; not property damage.


 Q: I understand. Loss of use of the property.


 A: Right.


 Q: Loss of use which occurred after your policy period?


 A: Yes.

* * *



 The exchange shows that Wille's reference to loss of use coverage after the policy
period was conditioned upon the occurrence of property damage during the policy period. 
It is not sufficient to show he knew it did not matter whether the loss of use occurred within
or outside the policy period. The record shows that until this court's decision in the
coverage suit, Travelers' contention was that it had no coverage at all because the
property damage took place outside of the policy period. That being so, Wille's testimony
was not inconsistent with Travelers' position. There is nothing in this record to show that
Travelers actually knew that loss of use occurring outside of the policy period was covered
until this court's opinion in the coverage suit.

 Appellees also argue that Travelers' failure to defend the AMCON suit, even though
Wille felt it should do so and was of a nature sufficient to justify the trial court's conclusion
that it engaged in unfair or deceptive acts or practices as defined in article 21.21, § 4(a)
of the Code. On August 23, 1990, Wille prepared an internal memorandum to his superior
in which he opined that the company owed a defense to Page in the Forum suit and they
should defend the AMCON suit as well, even though he felt no coverage existed for that
suit. However, after discussing the matter with his superior, on October 12, 1990, he wrote
Frank Salazar, appellees' attorney, that Travelers could find no coverage for the AMCON
suit (the Forum and AMCON suits were eventually consolidated) and would not defend or
indemnify Page in that regard. As we understand appellees' argument, the adjuster's
belief "triggered a duty on the part of TRAVELERS to defend the consolidated
AMCON/Forum claims" and its failure to do so was sufficient to give rise to punitive
liability. We disagree. While the evidence might be sufficient to show a difference of
opinion on the part of Travelers' employees, it was not communicated to appellees and
was not sufficient to constitute a misrepresentation sufficient to rise to punitive damages.

 As evidence of conduct giving rise to punitive damages, appellees also refer to
another Travelers' internal memo, which noted that "[o]ur Albuquerque Office has denied
indemnity & defense," which it had not done. However, this internal memo was also not
communicated to appellees and could not constitute an actionable misrepresentation. 
Appellees further rely on two other internal memos in Wille's file. In a March 12, 1991
memo, he referred to having spoke to Mr. Mills (apparently his superior) and stated, "our
position will be that we only owe defense after tender of Forum Lawsuit (May of '90) -- this
would apply to both legal and expert fees -- We would have to pay for the [AMCON]
defense after May of '90 as the lawsuits were consolidated and we cannot deny defense
of one part of the lawsuit." However, in another memo dated October 9, 1991, Wille noted
"Frank Salazar called . . . I explained that almost all of the legal bill was for the AMCON
settlement and that we would not pay those charges as we previously informed him we did
not have coverage for that matter." It is undisputed that neither of these memos were ever
shown to appellees and the memos themselves demonstrate at most an internal
disagreement and are not sufficient to show actionable misrepresentations. The oral
statement to Salazar is consistent with Travelers' positions about its contractual coverage
and is not sufficient to show an actionable misrepresentation.

 The next question that warrants discussion is whether the alleged
misrepresentations, if actionable, would have been the producing cause of damages as
a matter of law in at least the amount of the policy benefits incorrectly withheld. In support
of their contention that this is true, appellees rely on Vail v. Texas Farm Bureau Mut. Ins.
Co., 754 S.W.2d 129 (Tex. 1988), and Seneca Resources Corp. v. Marsh & McLennan,
Inc., 911 S.W.2d 144 (Tex.App.--Houston [1st Dist.] 1995, no writ). It is true that in Vail, 
the court used language to that effect; however, we agree with the Seneca court's
interpretation of that language as additionally explicated in Twin City Fire Ins. Co. v. Davis,
904 S.W.2d 663, 666 (Tex. 1995). The Seneca court explained that in using that
language, the Vail court was describing a measure of damages, but it did not remove the
necessity of proving causation. Id. at 149.

 In actions such as this involving alleged violations of the DTPA or the Code, the
party seeking recovery of damages bears the burden of establishing that the actions
complained of were a "producing cause" of the injuries suffered. Doe v. Boys Club of
Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995); Tex. Bus. & Com. Code, §
17.50(a)(1) (Vernon Supp. 2002). In doing so, the plaintiff must show an unbroken causal
connection between the alleged misrepresentation and injuries suffered by the complaining
party. Boys Club, 907 S.W.2d at 481.

 Appellees argue that it is undisputed that Travelers' conduct resulted in repeated
and continuous delays in the reimbursement of defense costs and its refusal to pay
covered defense and indemnity for loss of use damages. For the reasons we have
expressed, the record establishes that these matters arise from a bona fide dispute about
policy coverage which was not resolved until this court's opinion in the coverage case. 
Appellees argue that they suffered an economic loss because they incurred some
$243,000 in attorney fees, which they reimbursed under an indemnity agreement with
Safeco. There is nothing in the record other than speculation to show that Safeco would
not have retained independent counsel and retained engineering experts if Travelers had
not questioned its coverage, and the Pages' reimbursement liability for such expenses
arose out of the indemnity agreements they entered into with Safeco. With regard to the
Pages' mental anguish, there is nothing in the record demonstrating that Travelers ever
communicated directly with the Pages. Again, inasmuch as there was a bona fide dispute
about coverage, Travelers did not act unreasonably or unconscionably in denying payment
until the dispute was finally resolved by a court.

 Appellees also assert that the evidence is both legally and factually sufficient to
sustain the trial court's finding that Travelers was guilty of an unfair claim settlement
practice by failing to conduct a reasonable investigation of the claims against it based
upon all available information. In particular, appellees say the trial evidence established
that Travelers unreasonably disregarded evidence supporting its coverage of recoverable
elements of damage, i.e., defense costs and loss of use, "so it could litigate the coverage
trigger (manifestation) for property damage resulting from physical harm." They also
assert that Travelers conducted a results-oriented investigation on the manifestation of
damages without regard to the delay it caused in connection with the payment of defense
costs and loss of use damages. 

 In support of this argument, appellees primarily rely upon the court's explication in
Lyons v. Millers Cas. Ins. Co. of Texas, 866 S.W.2d 597 (Tex. 1993). In that case, the
court again explicated that "if the insurer has denied what is later determined to be a valid
claim under the contract of insurance, the insurer must respond in actual damages up to
the policy limits. But as long as the insurer has a reasonable basis to deny or delay
payment of the claim, even if that basis is eventually determined by the factfinder to be
erroneous, the insurer is not liable for the tort of bad faith." Id. at 600. Thus, the court
instructed, "the issue of bad faith focuses not on whether the claim was valid, but on the
reasonableness of the insurer's conduct in rejecting the claim." Id. at 601.

 In State Farm Lloyds v. Nicolau, 951 S.W.2d 444 (Tex. 1997), and in discussing a
jury finding that State Farm should have conducted a more thorough investigation and told
its insured about a policy provision for additional living expenses, the court explicated that
to be guilty of unconscionable conduct within the purview of the DTPA, it must be guilty of
"grossly" unfair conduct. In that regard, it defined the term "gross" as meaning "glaringly
noticeable, flagrant, complete and unmitigated." Id. at 451. It is in the light of these
explanations that we consider the question whether Travelers failed to conduct a proper
investigation.

 In support of their proposition that Travelers was delinquent in conducting its
investigation, appellees assert that the company unreasonably disregarded evidence
supporting coverage of elements of damage such as defense costs and loss of use, so it
could litigate "the coverage trigger (manifestation) for property damage resulting from
'physical harm'" and that it conducted a results-oriented investigation concentrating on
ways to escape coverage rather than impartially trying to determine what coverage might
exist. In advancing that argument, appellees primarily rely upon the testimony of their
expert witness, John Frazier. He reached his conclusion that Travelers was guilty of
unconscionable conduct because it failed to file a declaratory judgment action on the
question of coverage, it made repeated requests to Page's attorneys that could be used
in making coverage determinations, and it failed to have two adjusters investigating the
claim, one to investigate coverage and a separate adjuster to investigate underlying claims
against the insured. In regard to the failure to file a declaratory judgment action, we were
cited no authority holding that the failure to file a declaratory judgment action to determine
coverage by an insurer is sufficiently reprehensible to give rise to an action to recover
punitive damages.

 With regard to requesting information from Page, the record reveals that information
was voluntarily given to Travelers. The fact that information was requested from the
insured's representative does not mean that Travelers did not conduct a reasonable
investigation, nor does it support a conclusion that in doing so, it was guilty of
unconscionable conduct. See Pioneer Chlor Alkali Co., Inc. v. Royal Indem. Co., 879
S.W.2d 920, 941 (Tex.App.--Houston [14th Dist.] 1994, no writ). For the reasons we have
stated, the record shows a dispute about coverage primarily based upon the fact that if the
damages did not manifest themselves during the policy, Travelers contended it had no
coverage. That dispute was not settled until this court made its ruling. In view of this
context, the failure to have two adjusters assigned did not amount to the type of grossly
unfair conduct giving rise to exemplary damages. With regard to the assertion that
Travelers set up its investigation knowing that it at least had loss of use coverage, we have
discussed that question above and determined the record is not sufficient to support that
conclusion.

 In discussing the trial court's award of mental anguish damages, it is worthy of note
that the proof of the mental anguish shows that it was related to the Pages' concern over
the pending lawsuits and their potential exposure to damages, as well as natural concern
over pending litigation. However, for the reasons we have discussed above, Travelers'
refusal to admit coverage and to pay the trial court judgment until the case was finally
resolved at the appellate level does not rise to the intentional infliction of mental anguish
upon the Pages, nor was its conduct so outrageous as to give rise to a right to recovery.

 In summary, Travelers' first four issues are sustained. Because that holding will
require a reversal of the trial court judgment, it is not necessary to discuss its fifth and sixth
issues. The judgment of the trial court is reversed, and judgment here rendered that
appellees take nothing by their suit. 


 John T. Boyd

 Chief Justice


Do not publish.
1. The Pages signed the indemnity agreement with Safeco in their individual
capacities.
2. With the adoption of the 1997 changes to the Rules of Appellate Procedure, the
writ of error has been replaced by the petition for review. Tex. R. App. P. 53.1.
3. Travelers' first issue contains four subparts, its third issue contains two subparts,
and its fourth issue also contains two subparts.